IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAREN KERNER,

                OPINION AND ORDER

       Plaintiff,

                16-cv-187-bbc

   v.

GEORGIA-PACIFIC WOOD PRODUCT, LLC,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Karen Kerner is suing her former employer, defendant Georgia-Pacific Wood Product, LLC for allegedly subjecting her to a hostile work environment and then terminating her because of a disability that she suffered as a result of hand and wrist injuries sustained on the job. Now before the court are the parties' cross motions for summary judgment. Dkt. ##36, 41. I am denying both motions because I conclude that there are disputed issues of material fact that must be resolved by a jury. Fed. R. Civ. P. 56(a).

Before turning to the undisputed facts, a few preliminary matters require discussion.

PRELIMINARY MATTERS

A. Scope of Plaintiff's Claims

At the outset, it is necessary to clarify the scope of plaintiff's discrimination claims. As discussed in the September 27, 2016 order denying defendant's motion to dismiss, I understood plaintiff to be suing defendant for allegedly subjecting her to a hostile work

1

environment and then terminating her because of her disability. Dkt. #20 at 1. My understanding of plaintiff's claims was based on the allegations of plaintiff's complaint, as well as the complaint she filed with Wisconsin's Equal Rights Division. Dkt. #39-4. It appeared from defendant's motion for summary judgment that it understood plaintiff to be bringing claims of disability discrimination and hostile work environment. However, in her own motion for summary judgment, plaintiff argues that in addition to her disability discrimination claims, she is bringing claims under Title VII of the Civil Rights Act based on sex and pregnancy discrimination and retaliation. Dkt. #42 at 1. Many of plaintiff's proposed findings of fact and arguments relate to alleged sex and pregnancy discrimination.

Before a plaintiff may file suit for employment discrimination under Title VII, she must file a timely administrative complaint. Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001). In Wisconsin, a plaintiff has 300 days from the alleged discriminatory act to file a complaint with the Equal Employment Opportunity Commission or the state Equal Rights Division. 42 U.S.C. § 2000e-5(e); Johnson v. J.B. Hunt Transport, Inc., 280 F.3d 1125, 1128-29 (7th Cir. 2002). A plaintiff's failure to file a timely administrative complaint bars her suit. Salas v. Wisconsin Dept. of Corrections, 493 F.3d 913, 921 (7th Cir. 2007).

Plaintiff has not filed any complaint with the EEOC or the Equal Rights Division asserting retaliation, sex or pregnancy discrimination. Rather, the only administrative complaint she filed concerned disability discrimination. Dkt. #39-4. Therefore, plaintiff

may not pursue her retaliation, sex or pregnancy discrimination claims. I will not discuss further plaintiff's arguments or proposed findings of fact that relate solely to those claims.

B. Parties' Proposed Findings of Fact and Evidentiary Submissions

Both parties submitted proposed findings of fact. Defendant criticizes plaintiff's submissions on the ground that she failed to comply with this court's summary judgment procedures. In particular, plaintiff combined her proposed findings of fact with her legal brief, dkt. #42, rather than filing a separate document for her proposed facts as set forth in the procedures provided to plaintiff in the pretrial conference order, dkt. #24. Additionally, many of plaintiff's proposed findings of fact are actually legal arguments. However, in light of plaintiff's pro se status, I have considered all of plaintiff's factual propositions that relate to her disability discrimination claims and are fairly supported by evidence in the record. However, I have disregarded any of the plaintiff's exhibits and factual propositions that are irrelevant to her disability discrimination claims.

Unfortunately, defendant's own factual submissions do little to help clarify the record and provide context for the actions and decisions relevant to plaintiff's claims. Surprisingly, defendant chose not to submit any of its own evidence, such as declarations from the relevant decisionmakers explaining the basis for their decision to terminate plaintiff. Instead, defendant relies entirely on plaintiff's own deposition testimony to support its motion for summary judgment. However, many of defendant's citations to plaintiff's deposition testimony do not actually provide support for defendant's factual propositions.

For example, defendant proposes as fact that "there was never a time when the company failed to accommodate [plaintiff's] physical restrictions." DPFOF, dkt. #37, ¶ 18. But plaintiff's deposition testimony does not support this factual proposition. Plaintiff testified that her supervisor and coworkers refused on several occasions to assist her in completing tasks she struggled with because of her disability. Plt.'s Dep., dkt. #39, at 63, 76-77. Similarly, defendant proposes as fact that it attempted to "contact plaintiff on numerous occasions about job openings" and told plaintiff "to call back with a time she could meet." DPFOF, dkt. #37, ¶¶ 8, 12. Again, plaintiff's deposition testimony does not support defendant's proposed facts. Plaintiff testified that she attempted to call defendant numerous times and that defendant never called her back. Plt.'s Dep., dkt. #39, at 104-108. As for defendant's "communications" about job openings, plaintiff testified that these notices were not particular to her, but were actually job postings sent to all employees as a requirement of the collective bargaining agreement. Id. at 132-34.

Several more of defendant's proposed findings of fact are based on unfair or unsupported characterizations of plaintiff's deposition testimony. Therefore, I disregarded the majority of defendant's proposed findings of fact and instead reviewed plaintiff's deposition transcript and the exhibits she submitted.

From my review of plaintiff's deposition testimony and the evidence in the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Karen Kerner began working for defendant Georgia-Pacific Wood Products LLC, at a fiber mill in Phillips, Wisconsin, in March 2005. She was part of a union that was party to a collective bargaining agreement with defendant. In July 2012, she fractured her finger at work and was placed on medical restrictions.

In October 2012, plaintiff was given a diagnosis of bilateral carpal tunnel syndrome and chronic regional pain syndrome in both hands and wrists. She was placed on additional medical restrictions. At the time, plaintiff worked as second shift lead relief operator at the mill, which meant that she was responsible for certain operations when other employees were on break. Her position required her to clean, check computers, gauges, pressures and waxes, and operate the refiner and humidifier if necessary. Her position also required her to crawl under machines and climb ladders. Because of her carpal tunnel and chronic regional pain syndrome, plaintiff had "light duty" medical restrictions, which meant she could not perform all of the tasks associated with her position, including using automatic tools, some pushing and pulling, certain lifting duties and excessive gripping. Plaintiff's coworkers were supposed to help her perform the tasks that she could not perform alone.

After she was placed on medical restrictions, plaintiff was harassed and belittled by her supervisor, Rick Jones. Jones told her she was not good at her job, nobody liked her and she should be moved to a different department so he would not have to fire her. He gave her poor performance evaluations, discarded one of her leave request forms, falsely accused her of various matters, scolded her repeatedly, yelled at her when she needed help and attempted to humiliate her by highlighting her mistakes on paper for others to review. He

5

would come up behind her and try to startle her.  On one occasion, he removed a tool she needed to perform her job and told her to work without it, causing her to be injured.  During this same time period, plaintiff was treated poorly by some of her coworkers.  In particular, one coworker threatened to harm her, another coworker destroyed the special gloves she needed for her injured hands, some coworkers refused to help her with tasks that she could not do on her own and other coworkers went through her locker and brought her personal belongings out to the work floor.  Plaintiff reported Jones's and her coworkers' treatment to upper management at the mill.

In December 2012, plaintiff had carpal tunnel surgery on her right hand and took temporary medical leave while she recovered.  She returned to work in March 2013, after which Jones continued to treat her poorly and some coworkers refused to help her when she needed it.  On several occasions, plaintiff had to complete non-light duty work.  At some point in 2013, plaintiff's doctor told her that the restrictions associated with her carpal tunnel and chronic pain syndromes were likely permanent.

In early August 2013, plaintiff learned she was pregnant.  She had medical complications with her pregnancy and her doctor recommended that she stop working completely for the duration of her pregnancy.  She stopped working in early August 2013.

In February 2014, defendant's disability insurance provider notified plaintiff that her short term disability coverage was expiring.  Plaintiff was still pregnant at the time, and she sought advice from Janis Peterson, who worked in defendant's human resources office.  Peterson told plaintiff that she could continue on family medical leave under the terms of

the collective bargaining agreement, which provided 18 months of family medical leave. Plaintiff's baby was born in March 2014. At that time, she chose to stay on leave until she had exhausted the 18 months of leave to which she believed she was entitled under the collective bargaining agreement.

During part of the time plaintiff was on leave, she periodically received notices about job openings at the fiber mill. The notices were sent to all employees who worked for the mill, regardless whether they were on leave or qualified for the particular position, as a condition of the collective bargaining agreement. The notices were not targeted to plaintiff. These positions were filled by the seniority of those who applied. Defendant stopped sending notices of vacancies to all employees in June 2014.

In November 2014, plaintiff called Peterson in the human resources department and told her she was ready to return to work. Plaintiff believed the collective bargaining agreement required her return to her previous position as a second shift lead relief operator, with the same light duty restrictions for her carpal tunnel syndrome that had applied before her leave. Peterson told plaintiff to submit a medical release form from her doctor confirming that she was fit and able to return to work. Plaintiff did so on November 13, 2014, but she did not hear back from Peterson.

Plaintiff continued to attempt to contact defendant about returning to work with no success. On several occasions, plaintiff called defendant's human resources office and stated that she was ready and willing to come back to work. Nobody returned plaintiff's calls until February 2015, when Peterson called plaintiff while plaintiff was on a trip in Minnesota.

7

Union representatives were present at the mill at the time, and Peterson asked plaintiff if she could meet to discuss her return to work. Because she was out of town, plaintiff proposed setting up a telephone conference with the union representatives. Peterson told plaintiff she would call her back, but she did not. When plaintiff called her union representative about returning to work, the union representative told plaintiff that no one had contacted him about plaintiff.

On March 2, 2015, defendant sent plaintiff a letter stating that she was being terminated effective March 6, 2015 because she had been on leave for 19 months and had exhausted her leave time.

On May 18, 2015, plaintiff filed a complaint alleging employment discrimination with the Wisconsin Department of Workforce Development's Equal Rights Division. On October 19, 2015, the Division concluded that there was no probable cause to believe that defendant violated the Wisconsin Fair Employment Law. On December 23, 2015, the Equal Employment Opportunity Commission adopted the findings of the Division, dismissed plaintiff's EEOC charge and issued her a "right to sue" letter. Plaintiff filed this lawsuit on March 24, 2016.

The fiber mill closed in August 2015. Plaintiff believes she would have been fit to work from November 2014 to August 2015, when the mill closed.

OPINION

As discussed above, I understand plaintiff to be bringing claims that defendant

violated the Americans with Disabilities Act, 42 U.S.C. § 12112(a), by terminating her and subjecting her to a hostile work environment because of her disability. Defendant makes several arguments as to why plaintiff's claims must fail, including that (1) her claims are untimely; (2) she is not disabled; and (3) defendant had a legitimate, non-discriminatory reason for terminating plaintiff. I discuss each of these arguments below.

A. Timeliness

Defendant makes two arguments regarding the timeliness of plaintiff's claims. First, defendant argues that plaintiff's entire complaint should be dismissed because she failed to file it within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission. Second, defendant argues that plaintiff's hostile work environment claim is untimely because she failed to file a complaint with the state's Equal Rights Division within 300 days of the most recent act of hostility.

1. 90-day deadline

The Americans with Disabilities Act requires claimants to file suit within 90 days after receiving the right to sue letter from the EEOC. Houston v. Sidley & Austin, 185 F.3d 837, 838-39 (7th Cir. 1999). Defendant argues that plaintiff's suit is untimely because the EEOC's right to sue letter was sent on December 23, 2015, and plaintiff did not file suit until March 24, 2016, 92 days later.

Defendant is incorrect. It is well established that the 90-day period does not start

running until the claimant actually receives the right to sue letter from the EEOC, not when it was sent. DeTata v. Rollprint Packaging Products Inc., 632 F.3d 962, 967–68 (7th Cir. 2011); Prince v. Stewart, 580 F.3d 571, 574 (7th Cir. 2009); Threadgill v. Moore, U.S.A., Inc., 269 F.3d 848, 849–50 (7th Cir. 2001). Defendant has submitted no evidence of when plaintiff *received* the right to sue letter, though I can take judicial notice that she would not have received a letter in Phillips, Wisconsin on the same day it was sent from Milwaukee. Moreover, under Federal Rule of Civil Procedure 6(d), parties have an additional three days to respond if service is made by mail. Under this rule, a court may presume that a claimant receives a right to sue letter within three days of mailing. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1 (1984) (presuming EEOC right to sue notice was received three days after its issuance, pursuant to Rule 6, when plaintiff did not have proof otherwise). Because plaintiff filed her complaint within 90 days of her presumed receipt of the right to sue letter, her complaint was timely.

2. 300-day deadline

Defendant next argues that plaintiff's hostile work environment claim is barred because she failed to file a hostile work environment claim with the EEOC or Wisconsin's Equal Rights Division within 300 days of the alleged hostile work environment. In this instance, I agree with defendant that plaintiff's claim is barred.

Like a plaintiff who brings a discrimination claim under Title VII, a plaintiff who wishes to bring a claim under the Americans with Disabilities Act in federal court must file

an administrative complaint with the state's Equal Rights Division within 300 days from the date of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Johnson v. J.B. Hunt Transport, Inc., 280 F.3d 1125, 1128-29 (7th Cir. 2002). A plaintiff's failure to file a timely administrative complaint bars her suit. Salas, 493 F.3d at 921; Alexander v. Wisconsin Dept. of Health & Family Services, 263 F.3d 673, 680 n.1 (7th Cir. 2001).

Plaintiff alleges that she was subjected to a hostile work environment during 2012 and 2013. However, her last day at work was August 3, 2013. Plaintiff cannot prove she was subjected to a hostile work environment during a time in which she was absent from work. Thus, plaintiff was required to file her Equal Rights Division charge by May 30, 2014, which would have been within 300 days of her last date of work. Instead, she waited until May 18, 2015, which was 653 days after her last day of work. Therefore, her hostile work environment claim is time-barred.

B. Disability Discrimination

Plaintiff's remaining claim is that she was terminated because of her bilteral carpal tunnel and chronic regional pain syndrome. The Americans with Disabilities Act prohibits discrimination against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees[.]" 42 U.S.C. § 12112(a). The Act describes various ways an employer can discriminate on the basis of disability, including failing to make reasonable accommodations and denying employment opportunities, which includes termination of employment. 42 U.S.C. § 12112(b)(5)(A), (B). See also Brumfield

v. City of Chicago, 735 F.3d 619, 630 (7th Cir. 2013). To prevail on an ADA discriminatory termination claim, plaintiff must show: (1) she is disabled; (2) she is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. Felix v. Wisconsin Dept. of Transportation, 828 F.3d 560, 568 (7th Cir. 2016); Majors v. General Electric Co., 714 F.3d 527, 533 (7th Cir. 2013). Defendant argues that plaintiff cannot prove any of these things.

1. Evidence of disability

An individual is disabled within the meaning of the ADA when she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §12102(1). Whether any given condition is a disability "is an individualized inquiry, which must be determined on a case-by-case basis." Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 631 (7th Cir. 1998) (internal citations omitted). 29 C.F.R. § 1630.2(i)(1)(i) includes in the definition of "major life activities" a variety of activities including "concentrating, thinking, communicating, interacting with others, and working[.]" When the major life activity under consideration is that of working, a plaintiff must demonstrate that "she was significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Stein v. Ashcroft, 284 F.3d 721, 725 (7th Cir. 2002).

Defendant disputes plaintiff's contention that her carpal tunnel and chronic regional pain syndrome interfered with "one or more major life activities." Defendant argues that plaintiff's only evidence on this point is that her hand and wrist problems limit her ability to perform certain narrow aspects of her job for defendant, which is not enough to establish disability. E.g. Stein, 284 F.3d at 726 ("A plaintiff's inability to perform 'one narrow job for one employer' is insufficient to establish a disability.").

Plaintiff testified at her deposition that her hand and wrist problems caused her "continued chronic pain" that radiated from her hands up to her arms and shoulders, requires her to take daily pain medication and restricted her ability to work in several ways. Plt.'s Dep., dkt #39, at 70, 104. In particular, she was restricted to "minimal use" of her right and left extremities, can lift only one to five pounds, cannot push or pull and must rest her hands every hour. Id. at 97-98. In addition, she could not use power tools or engage in excessive gripping. I conclude that this testimony is sufficient to create a genuine factual dispute regarding whether plaintiff's carpal tunnel and chronic regional pain syndrome substantially interfered with her ability to work generally, and not just in performing a narrow job for one employer. This is particularly true in light of the statement in 29 C.F.R. § 1630.2(j)(1)(i), that "substantially limits" is "not meant to be a demanding standard," and shall "be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." The ability to engage in only minimal use of her right and left extremities, the inability to lift more than five pounds and the requirement that she rest every hour would seem to interfere substantially with her ability to perform a broad range

of jobs, and not just one narrow part of her job for defendant. Accordingly, I conclude that plaintiff has made a sufficient showing that she is disabled under the ADA to withstand summary judgment.

2. Qualified to perform the essential functions of the employment position

Plaintiff must also show that she is a "qualified" individual with a disability, meaning that she is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant asserts that plaintiff cannot show that she was qualified because she never returned to work after her leave and attendance is an essential function of any job. Waggoner v. Olin Corp., 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."). Defendant further argues that because plaintiff failed to pursue any of the numerous openings offered by defendant and otherwise failed to make an effort to communicate with defendant about positions, she could not perform the essential functions of her job.

However, according to plaintiff's version of events, which is the *only* version of events before the court, she took an extended maternity leave because defendant told her she could do so under the terms of the collective bargaining agreement. Defendant has not disputed this or otherwise argued that plaintiff extended her maternity leave improperly. Moreover, plaintiff says she was capable of returning to work in November 2015, but when she

attempted to do so, defendant ignored her, waited until her leave had expired and then fired her. As for the purported job openings, plaintiff explains that defendant did not actually send those notices to her in particular, but rather sent those notices to all employees. Further, there is no evidence about what these openings were, whether plaintiff was qualified for them or whether she would have been placed in them in light of her seniority. Nor has defendant explained why plaintiff should have applied for different positions if, as plaintiff asserts, she should have been returned to her previous position. In short, none of the evidence in the record supports defendant's argument that plaintiff could not perform the essential functions of her job when she sought to return in November 2015. For purposes of summary judgment, I am satisfied that plaintiff has presented a prima facie case showing that she was a qualified individual under the ADA.

3. Causation

Finally, defendants seek summary judgment on the basis that plaintiff cannot show that she was terminated because of her disability. Specifically, defendant argues that the evidence demonstrates that plaintiff was terminated not because of her any disability, but because she failed to return to work.

Defendant's argument suffers from the same problems identified above. Specifically, defendant has submitted *no* evidence to explain why it would terminate plaintiff for failing to return to work when, according to plaintiff's testimony, plaintiff was actively seeking to return to work. Plaintiff suggests that the reason defendant has no evidence to explain its

15

decision is because defendant actually terminated her because it did not want to continue accommodating her disability by requiring others to help her with non-light duty tasks. Plaintiff points out that she had complained repeatedly to upper management about her supervisor's behavior and about the instances in which she was denied assistance or otherwise harassed.

Construing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff was terminated because of her disability. Defendant has not provided an adequate explanation for its termination decision and has offered no evidence to dispute plaintiff's description of the tension created among other employees by the accommodations she needed. It may be that defendant has a reasonable and plausible explanation for plaintiff's termination, but defendant has not offered it to the court. From the evidence in the record at this stage, a jury could conclude that defendant did not want to deal with accommodating plaintiff's disability and that, instead of allowing her to return to work in November 2014, it strung her along until March 2015 when it could fire her because her leave expired. For these reasons, defendant is not entitled to summary judgment.

ORDER

IT IS ORDERED that

1. Defendant Georgia-Pacific Wood Product, LLC's motion for summary judgment, dkt. #36, is DENIED.

2. Plaintiff Karen E. Kerner's motion for summary judgment, dkt. #41, is DENIED.

Entered this 18th day of October, 2017.

                            BY THE COURT:

                            /s/
                            _____

                            BARBARA B. CRABB
                            District Judge